[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 18-14835

_____

D.C. Docket No. 1:17-cv-00247-MW-GRJ

KEYTON BENSON,

Plaintiff-Appellant,

versus

HARTFORD LIFE & ACCIDENT
INSURANCE COMPANY,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

(November 22, 2019)

Before JILL PRYOR, GRANT and ANDERSON, Circuit Judges.

PER CURIAM:

In this appeal, Keyton Benson challenges the district court's grant of summary judgment in favor of Hartford Life and Accident Insurance Company, which affirmed Hartford's decision to deny Benson long-term disability benefits. Because we conclude that Hartford's decision was not "wrong," we affirm.

We have had the benefit of oral argument and have carefully reviewed the briefs of the parties and the administrative record. Because we write only for the benefit of the parties, who are familiar with the facts and proceedings at issue, we include in our discussion only those facts necessary to understand our decision.

Benson's claim for long-term disability benefits is governed by a policy issued by Hartford to Benson's employer, Tower Hill Insurance Group, which in turn is governed by the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001–1461. Hartford's policy provides that it will pay a monthly benefit to the individual policyholder if they:

1) become Disabled while insured under The Policy;
2) are Disabled throughout the Elimination Period;
3) remain Disabled beyond the Elimination Period; and
4) submit Proof of Loss to Us.

(emphasis added). The Policy defines "disability" or "disabled" as follows:

Disability or Disabled means You are prevented from performing one or more of the Essential Duties of:
1) Your Occupation during the Elimination Period;
2) Your Occupation, for the 2 years following the Elimination Period, and as a result Your Current Monthly Earnings are less than 80% of Your Indexed Pre-disability Earnings; and
3) after that, Any Occupation.

2

Accordingly, subject to the terms of the policy, Benson is only entitled to a long-term disability benefit if he can prove that he was disabled <u>throughout</u> the entire Elimination Period.  In other words, Benson cannot prevail merely by proving that he was disabled <u>at some point</u> during the Elimination Period.  Rather, he must prove that he was disabled throughout the entire Elimination Period, a requirement that he does not dispute.  The parties agree that, for the purposes of this case, the Elimination Period extended from May 15, 2016, to August 27, 2016.

We review <u>de novo</u> a district court's ruling reviewing a plan administrator's ERISA benefits decision.  As did the district court, in our review of Hartford's decision, we apply the standard set out by our decision in <u>Blankenship v. Metropolitan Life Ins. Co.</u>:

> (1) Apply the de novo standard to determine whether the claim administrator's benefits-denial decision is "wrong" (i.e., the court disagrees with the administrator's decision); if it is not, then end the inquiry and affirm the decision.
>
> (2) If the administrator's decision in fact is "de novo wrong," then determine whether he was vested with discretion in reviewing claims; if not, end judicial inquiry and reverse the decision.
>
> (3) If the administrator's decision is "de novo wrong" and he was vested with discretion in reviewing claims, then determine whether "reasonable" grounds supported it (hence, review his decision under the more deferential arbitrary and capricious standard).

3

(4) If no reasonable grounds exist, then end the inquiry and reverse the administrator's decision; if reasonable grounds do exist, then determine if he operated under a conflict of interest.

(5) If there is no conflict, then end the inquiry and affirm the decision.

(6) If there is a conflict, the conflict should merely be a factor for the court to take into account when determining whether an administrator's decision was arbitrary and capricious.

644 F.3d 1350, 1355 (11th Cir. 2011) (quotation omitted).

Accordingly, because it is ultimately dispositive of our resolution of this case, the primary issue before us is whether Hartford's decision denying long-term disability benefits to Benson was "wrong." Put another way, because it is undisputed that, to be entitled under the policy to such benefits, Benson had to prove that he was disabled throughout the *entire* Elimination Period, the issue is whether Hartford was "wrong" in finding that Benson failed to prove that he was.

Based primarily on the opinions of two doctors who conducted a file review of the medical evidence,[1] Hartford determined that the clinical evidence indicated that Benson was not "disabled," as defined by its policy, from May 15, 2016, to July 19, 2016, the date of his knee replacement surgery. It also determined that Benson would have sufficiently recovered from the knee surgery at least by August

---

[1] Hartford sought the opinion of Dr. Benjamin Kretzmann, a board-certified rheumatologist, as well as Dr. Laurie Molina, a board certified internist. Both the doctors reviewed the medical evidence, including the contemporaneous treatment notes of the treating physicians.

4

26, 2016, and was not disabled then or thereafter.  In sum, Hartford found that Benson was not disabled throughout the entire Elimination Period, as required under the policy.

Our careful review of the evidence before Hartford at the time it rendered that decision convinces us that Hartford's decision was not "wrong," because Benson failed to prove that he was disabled throughout the Elimination Period. We base this conclusion on (1) the substance of Benson's claims for both short-term and long-term disability benefits, (2) the contemporaneous treatment notes from Benson's physicians, and (3) the ability of Benson to perform the essential duties of his job.  Each is addressed in turn.

First, Benson's claims for short- and long-term disability benefits paint a conflicting picture of his alleged disability.  The argument Benson presented to the district court—and that he makes to us now—is that he was disabled by the pain and fatigue that he experienced as a result of his polymyalgia rheumatica ("PMR").[2]  We find it significant, however, that PMR was never identified as a disabling condition in his initial applications for short- and long-term disability benefits.  Benson's claim for short-term disability benefits (which Hartford granted in full from May 15, 2016, through August 27, 2016) was predicated *solely* on the knee injury that occurred on May 15, 2016, and necessitated a knee replacement

---

[2] PMR is a rheumatic disease that causes muscle pain and stiffness.

5

surgery on July 19, 2016.  Benson's claim for *long*-term disability benefits, which he submitted on August 2, 2016, was initially predicated on a similar rationale.  Dr. Celal Erbay, Benson's primary-care physician, submitted an attending physician's statement in support of Benson's claim for long-term benefits.  In that statement, Dr. Erbay identified Benson's "Primary condition" as "Knee Replacement" and his subjective symptoms as "knee pain; 'clicking' sounds; [and] swelling."

In that attending physician statement, Dr. Erbay made no mention of any current disabling symptoms related, directly or indirectly, to Benson's PMR diagnosis.  It was only after an August 24, 2016, inquiry from Hartford that Dr. Erbay "clarified" that Benson's disability was due primarily to stiffness, pain, and fatigue from his PMR—not from his knee.[3]

Second, we conclude that the contemporaneous treatment notes kept by Benson's physicians indicate that he was not disabled for substantial parts of the Elimination Period.  None of the treatment notes made by Dr. Erbay, between May

---

[3] The contemporaneous notes of Benson's treating physicians also indicate that Benson was not disabled on account of his knee for considerable periods of time during the Elimination Period.  From May 15, 2016, the day of the knee injury, to July 19, 2016, the day of the knee replacement, there is no indication in the treatment notes of either Dr. Erbay or Dr. Andrew Rocca, the orthopedic surgeon who performed Benson's knee replacement, that Benson was disabled on account of the knee.  We can assume that there may have been some time immediately after the surgery that Benson may have been disabled.  But Dr. Rocca's August 25, 2016, attending physician statement, submitted in support of Benson's claim for long-term disability benefits, certified that Benson's knee had sufficiently recovered such that it is clear, at least as early as August 25, 2016, Benson was no longer disabled on account of his knee.

15, 2016, and July 19, 2016, indicates any disability attributable to PMR or any other cause or causes.  During Benson's visits to Dr. Erbay during this time, his complaints were chiefly about his knee, and mentioned PMR symptoms only secondarily or tertiarily, if at all.  For example, on May 26, 2016, Dr. Erbay's notes indicate that Benson reported increased fatigue and early-morning stiffness ("EMS") of only fifteen to twenty minutes.[4]  There is no suggestion in Dr. Erbay's notes that Benson was disabled as of May 26, 2016, by PMR or otherwise.  Dr. Erbay's notes from Benson's June 3, 2016, appointment with him paint a similar picture.

This trend continued after Benson's knee replacement surgery.  On July 26, 2016, at Benson's first visit with Dr. Erbay after his successful surgery, Dr. Erbay noted that Benson felt "great" about his PMR and was not experiencing headaches or fatigue.  On August 5, 2016, Dr. Erbay indicated that Benson was on a reduced dose of Prednisone but was still not experiencing major PMR symptoms like fatigue.

Treatment records from other physicians are similarly illustrative.  On June 27, 2016, on a visit to Dr. Seldon Longley, Benson's rheumatologist, the doctor's treatment notes indicate that Benson's PMR was "well controlled" by his Prednisone prescription.  Dr. Rocca observed on August 2, 2016 (the day that

---

[4] EMS was one of the PMR symptoms on which Benson based his claim of disability.

Benson filed his claim for long-term disability benefits), that Benson was recovering well from his surgery.  Like Dr. Erbay, he noted no symptoms of PMR.[5]

Only on August 31, 2016, several days *after* the Elimination Period and after Dr. Erbay's August 24, 2016, "clarification" to Hartford, do Dr. Erbay's treatment notes indicate any meaningful increase in Benson's PMR symptoms.  At that visit, he noted that Benson's knee pain was tolerable but that he was experiencing increased stiffness (three to four hours of EMS) and fatigue.[6]  Accordingly, Dr. Erbay increased Benson's Prednisone dosage.  Dr. Erbay saw Benson again on September 8, 2016, when Benson again reported his knee pain as tolerable; he said his EMS was not better, but nonetheless reported that it decreased to one hour.

We conclude that these notes support a finding that, at most, Benson was disabled for a short period of time while recovering from his knee replacement surgery on July 19, 2016.  Accordingly, we further conclude that Benson was not disabled throughout the entire Elimination Period.

---

[5] At this August 2, 2016, appointment, Dr. Rocca also reported that Benson was "doing well," "walking quite a bit," and "not requesting any pain medicine."  Although we need not so decide, it is likely that Benson's knee was no longer disabling much earlier than August 25, 2016, possibly as early as August 2, 2016.

[6] Thus, Dr. Erbay's treatment notes provide support for significant PMR symptoms only after the Elimination Period ended, thus falling short of the proof Benson needs—i.e., disability throughout the *entire* Elimination Period.

8

Third, after reviewing the above information, we compare it with the physical demands of Benson's job. According to a physical demands analysis submitted by Benson's employer, his job was largely sedentary. His daily tasks required him to sit for a maximum of two hours at a time, stand or walk for thirty minutes at a time, and did not require him to lift anything heavy. Each day, he was required to sit for seven hours, stand for thirty minutes, and walk for thirty minutes.

We compare these physical demands with the August 25, 2016, attending physician's statement submitted by Dr. Rocca to Hartford. Dr. Rocca certified that Benson could sit and stand for eight hours at a time and walk for thirty minutes at a time for up to six to eight hours per day. These endorsements square neatly with the physical demands of Benson's job. Therefore, at least as early as August 25, 2016, it is clear that Benson's knee did not prevent him from performing the essential duties of his job. And as noted above, the contemporaneous notes of Benson's treating physicians indicate that Benson was not disabled—by his knee, complications from PMR, or otherwise—for significant periods of time during the Elimination Period.

Ultimately, we agree with Hartford—and Doctors Kretzmann and Molinda—in finding that Benson was not entitled to long-term disability benefits. Our best judgment, based on a review of all of the medical evidence, is that Benson

9

was not disabled from May 15, 2016, until the surgery on July 19, 2016, and for some period of time after he sufficiently recovered from the knee surgery—at least after August 25, 2016, when Dr. Rocca indicated that, with respect to his knee, he was clearly capable of performing what his job required.  We conclude that it is more reasonable to rely upon the clear indications in the contemporaneous treatment notes that Benson was not disabled—on account of his knee, PMR symptoms, or otherwise—in preference to Benson's arguments about his increased pain and fatigue from PMR and in preference to the later characterizations of Benson's symptoms by Dr. Erbay.

For the foregoing reasons, our de novo review persuades us that the decision of Hartford denying Benson's claim for long-term disability benefits was not "wrong."  Under our Blankenship standard, that ends our inquiry.

We note that even if we did continue the Blankenship analysis, we would nonetheless also affirm the judgment of the district court and uphold Hartford's decision.  Even if we believed that Hartford's decision was "wrong," and even if we pursued steps 3–6 of the Blankenship analysis, 644 F.3d at 1355, we would still conclude that Hartford's decision was not arbitrary and capricious.  It is undisputed that the policy gives Hartford the necessary discretion.  But it is also undisputed that Hartford makes the eligibility decision and pays the benefits awarded, so Hartford has a structural conflict of interest.  It is obvious from our discussion

10

above that Hartford's decision was amply supported by reasonable grounds (steps 3 and 4). Because there is a conflict of interest (step 4), that is a factor in the determination of whether Hartford's decision was arbitrary or capricious (step 6). Even factoring in that conflict of interest, the reasonableness of Hartford's decision is so clear that we readily conclude it was not arbitrary and capricious.

For the foregoing reasons,[7] we affirm the judgment of the district court and uphold the decision of Hartford denying Benson's claim for long-term disability benefits.

---

[7] On appeal, Benson makes several additional arguments, all of which we conclude are without merit. Benson's arguments about objective evidence being unnecessary in the context of a disability claim based on subjective symptoms—and his related arguments like the asserted need for an independent examination and/or an evaluation of Benson's credibility—are wholly without merit. As stated in the text, the gist of the decision denying disability benefits in this case is that Benson's claims of disabling pain and fatigue are simply inconsistent with the contemporaneous notes taken by his treating physicians at the time of the office visits.

Benson also argues that Hartford's final decision denying his claim on administrative appeal was based on a new and different rationale (as compared to its initial denial), thus depriving him of the opportunity of an appeal to challenge the new rationale. Benson argues that the initial denial was based on his failure to prove his disability on a particular date—August 28, 2016—whereas the final decision on appeal was based on his failure to prove that he was disabled throughout the entire Elimination Period. Benson's argument is meritless. The initial decision made amply clear that the Policy required him to prove that he was disabled throughout the entire Elimination Period. Indeed, the initial decision found that Benson was capable of performing full-time work for approximately the same periods of time that the final decision so found. We conclude that Benson had ample opportunity and notice to address the precise basis of the final decision.

In his initial brief on appeal, Benson mentions—but does not develop—an argument that, after he requested reconsideration of Hartford's denial of his appeal, Hartford's claim process was not principled because it failed to consider Dr. Erbay's July 21, 2017, letter and the July 24, 2017, letter from Donald C. Matz, Benson's supervisor at Tower Hill Insurance Group. Erbay's letter purported to respond to the conclusions made by Drs. Kretzmann and Molina, whereas Matz's letter attested to Benson's honesty and integrity, as well as Matz's personal perspective

11

**AFFIRMED.**

---

of Benson's alleged disability.  Benson complains that Hartford failed to provide these letters to Drs. Kretzmann and Molina.  Hartford responds that the letters were untimely, having been submitted after a final decision was rendered on Benson's administrative appeal and therefore Hartford was not required to provide them to the reviewing doctors.  We find the record to be consistent with Hartford's position and thus find no error on its part.

As an initial matter, the remedy Benson seeks—a remand to Hartford for reconsideration in light of this evidence—is unavailable to him.  He concedes in his reply brief that he failed to request a remand before the district court.  As such, we conclude that this argument was not properly raised before the district court and is therefore waived because "we will not entertain [a] request for relief for the first time on appeal."  S.F. Residence Club, Inc. v. 7027 Old Madison Pike, LLC, 583 F.3d 750, 755 (11th Cir. 2009).

In any event, we conclude that neither letter would have changed the outcome here.  Dr. Erbay's opinions about this case were amply represented in earlier communications from him that were considered by Hartford and Drs. Kretzmann and Molina.  His letter added little to the administrative record that was not already there.  Matz's letter is similarly unhelpful to Benson's case.  Benson's attorney inadvertently omitted Matz's letter in the communication to Hartford on July 24, 2017, which included Erbay's letter.  We note that Benson did not request reconsideration on the basis of Matz's letter at any point and did not mention the letter at all in his September 22, 2017, letter to Hartford that sought reconsideration or in his initial complaint filed with the district court.  We need not decide whether Hartford did in fact consider the letter—though its August 24, 2017, letter to Benson suggests that it did not—because the failure to consider the letter would not warrant a remand for further consideration in any event.  Matz's letter dealt with his evaluation of Benson's job performance *after* the crucial Elimination Period, which is the only period of time at issue in this case.  Accordingly, we determine that the failure to consider either letter does not provide grounds for a remand, a remedy that Benson waived anyway.

Finally, we can assume arguendo, but not decide, that the evidence that Benson uncovered in discovery in the district court—evidence of Hartford's policies and guidelines, the deposition of Hyndman (Hartford's appeals specialist), and the information about Dr. Ayyar—would be admissible to show that Hartford's claims process was biased or otherwise not full and fair.  We have considered Benson's arguments in this appeal and have considered the evidence to which he points.  We conclude that Benson has failed to make even an arguable showing of bias or that the process was not full and fair.  This is especially true in light of our own review of the evidence and our own conclusion that the contemporaneous treatment notes of Benson's treating physicians do not support a conclusion that plaintiff was disabled throughout the entire Elimination Period.